# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STERLING COMMERCIAL CREDIT, LLC | CIVIL ACTION |
| VERSUS | 24-429-SDD-SDJ |
| COMPLIANCE ENVIROSYSTEMS, LLC | |

## RULING

Before the Court is defendant Compliance Envirosystems, LLC's ("Compliance" or "Defendant") Motion to Dismiss for *Forum Non Conveniens*.[1] Plaintiff Sterling Commercial Credit, LLC ("Sterling" or "Plaintiff") opposes the motion.[2] Defendant has filed a reply.[3] The Court has reviewed the law and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Compliance's motion is granted.

## I.     BACKGROUND

This dispute arises from a September 13, 2021 subcontract between United Resource, LLC ("United") and Compliance.[4] Under this subcontract, United was to inspect and clean catch basins and pipes throughout South Louisiana following Hurricane Ida.[5] On September 23, 2021, United invoiced Compliance $148,125 for its services.[6]

Prior to its subcontract with Compliance, United filed for bankruptcy on March 15, 2020, under Title 11 of the United States Code, Chapter 11, Subchapter V.[7] United

---

[1] Rec. Doc. 10.
[2] Rec. Doc. 14.
[3] Rec. Doc. 15.
[4] Rec. Doc. 10-3, p. 1. *See also* Rec. Doc. 10-2 (subcontract between United and Compliance).
[5] Rec. Doc. 10-2, p. 15.
[6] Rec. Doc. 1-1, p. 27 (United's invoice to Compliance).
[7] Rec. Doc. 14-2, p. 2.

entered into an Accounts Purchase and Security Agreement with Sterling the following day (hereinafter referred to as the "factoring[8] agreement").[9] "Sterling, among other things, makes loans and provides financial accommodations, including factoring transactions, to small and mid-size companies."[10] Under the factoring agreement, United sold and assigned its accounts receivable[11] to Sterling.[12] On May 5, 2020, the United States Bankruptcy Court for the Eastern District of Michigan entered a final order authorizing the factoring agreement.[13]

Sterling then notified Compliance on June 9, 2020, via registered mail that its account with United was sold and assigned to Sterling.[14] "This Notification specifically instructed [Compliance] that all payments otherwise due to United should be paid directly to Sterling pursuant to . . . Uniform Commercial Code provision § 9-406(a)."[15] Sterling sent Compliance a second notification on October 29, 2021, which Compliance received on November 6, 2021.[16] Despite these notifications, Compliance paid United $148,125 for its storm restoration work instead of Sterling.[17] Sterling made numerous written demands to Compliance for payment, but Compliance refused to pay.[18]

---

[8] Factoring is "[t]he buying of accounts receivable at a discount." *Factoring*, BLACK'S LAW DICTIONARY (12th ed. 2024). "The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Id.*
[9] Rec. Doc. 1-1, p. 2.
[10] *Id.*
[11] *See infra* note 40.
[12] Rec. Doc. 1-1, p. 2.
[13] Rec. Doc. 14-3.
[14] Rec. Doc. 1-1, p. 3. *See also id.* ("A review of the registered receipt confirms that Defendant received the First Notification on June 9, 2020.").
[15] *Id.*
[16] *Id.*
[17] *Id.* at p. 27 (United's invoice to Compliance); Rec. Doc. 10-3, p. 2 (Compliance's concession in briefing that it paid United.).
[18] Rec. Doc. 1-1, p. 4.

Sterling brought suit against Compliance in the Eastern District of Michigan for nonpayment.[19] The Eastern District of Michigan dismissed the case without prejudice, finding it lacked personal jurisdiction over Compliance.[20] Sterling refiled its suit in this Court on May 31, 2024.[21] Compliance now moves for dismissal based on *forum non conveniens*.[22] It argues that the forum selection clause in its subcontract with United is enforceable against Sterling; thus, venue is exclusive to the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana ("19th JDC"), per the subcontract's forum selection clause.[23]

## II. LAW AND ANALYSIS

### A. Legal Standard

The doctrine of *forum non conveniens* allows a court to decline jurisdiction, even when the case is properly before the court, if the case may be tried in another forum more conveniently.[24] *Forum non conveniens* doctrine "rests upon a court's inherent power to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice."[25] "In deciding a motion to [dismiss] for *forum non conveniens*, a court is not limited to the allegations in the complaint [and] may consider all of the evidence before it."[26]

In *Atlantic Marine*, the United States Supreme Court discussed how *forum non*

---

[19] *See Sterling Com. Credit, LLC v. Compliance Envirosystems, LLC*, No. 23-12775 (E.D. Mich.) (ECF No. 1).
[20] *See Sterling*, No. 23-12775 (ECF No. 9).
[21] Rec. Doc. 1.
[22] Rec. Doc. 10.
[23] Rec. Doc. 10-3.
[24] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).
[25] *In re Air Crash Disaster near New Orleans v. Pan Am. World Airways, Inc.*, 821 F.2d 1147, 1153–54 (5th Cir. 1987) (en banc).
[26] *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, No. 16-16791, 2018 WL 3632356, at *4 (E.D. La. July 31, 2018) (citing *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158–59 (2d Cir. 1980) (en banc)).

*conveniens* provides for the transfer of cases where a forum selection clause designates a nonfederal forum:

> [T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*. Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* "has continuing application in federal courts." And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.[27]

Generally, a court considering a *forum non conveniens* motion is bound to consider certain factors—factors relating to the parties' private interests, including "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing[] witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive,"[28] as well as public interest factors including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."[29] The court must also give some weight to the Plaintiff's choice of forum.

However, the United States Court of Appeals for the Fifth Circuit, relying on *Atlantic Marine*, provides instruction on the application of *forum non conveniens* where

---

[27] *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.,* 571 U.S. 49, 60–61 (2013) (citations omitted).
[28] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotations omitted).
[29] *Id.* (internal quotations omitted).

the parties have contractually agreed to a forum:

> The presence of a valid forum-selection clause simplifies this analysis in two ways. First, the plaintiff's choice of forum merits no weight because, by contracting for a specific forum, the plaintiff has effectively exercised its venue privilege before a dispute arises. Second, the private-interest factors weigh entirely in favor of the preselected forum, so that the district court may consider arguments about public-interest factors only. Hence, a valid forum-selection clause controls the *forum non conveniens* inquiry in all but the most unusual cases.[30]

"If the forum-selection clause is both mandatory and enforceable, the court must decide whether . . . the case is one of the rare cases in which the public-interest [*forum non conveniens*] factors favor keeping a case despite the existence of a valid and enforceable [forum-selection clause]."[31] Here, Sterling does not dispute that the forum selection clause in United and Compliance's subcontract is mandatory[32] but does disputes its enforceability. As such, the Court must first determine whether the clause is enforceable against Sterling.

### B. Enforceability of the Subcontract's Forum Selection Clause Against Sterling

Mandatory forum selection clauses are presumed enforceable.[33] "The presumption of enforceability may be overcome, however, by a clear showing that the clause is unreasonable under the circumstances."[34] Sterling fails to rebut this presumption.

---

[30] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (internal citations and quotations omitted) (italicizes added).
[31] *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 367 (5th Cir. 2024) (alterations in original) (quoting *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023)).
[32] Under the forum selection clause, "dispute[s] *shall* be resolved by litigation in the 19th [JDC] . . . ." Rec. Doc. 10-2, p. 6 (emphasis added).
[33] *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). *See also Noble House, L.L.C.*, 67 F.4th at 248; *Hotel Mgmt. of New Orleans, LLC v. Gen. Star Indem. Co.*, 603 F. Supp. 3d 356, 361–63 (E.D. La. 2022).
[34] *Id.* at 963 (internal quotations omitted) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). *See also id.* ("Unreasonableness potentially exists where (1) the incorporation of the forum selection clause

Instead, Sterling argues that the clause is unenforceable because it is not subject to the terms of United and Compliance's subcontract.[35] Compliance argues that despite Sterling being a non-signatory, it is nonetheless bound by the subcontract's terms through assignment/subrogation and/or direct-benefits estoppel. The Court will address each of these theories in turn.

### 1. Assignment/Subrogation

Sterling concedes that United assigned its accounts receivable to Sterling. Greg Boller, Sterling's Chief Loan Officer, explained through affidavit that under the factoring agreement, "United (1) agreed to make certain payments to Sterling and (2) sold and assigned to Sterling its accounts receivable."[36] Sterling argues that, since United never assigned Sterling its rights under the subcontract, Sterling is not subrogated in as a party to the subcontract, making the subcontract's forum selection clause unenforceable against it. According to Sterling, "factoring is an arrangement by which the company is buying the receivables. It is not taking assignment or assuming the underlying obligation or performance of the underlying contract."[37]

Sterling's argument is at odds with the plain language of Louisiana's Civil Code and Revised Statutes. Under Civil Code article 2642, all rights are assignable except those pertaining to strictly personal obligations.[38] Once assignment occurs, "[t]he

---

into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.").
[35] Rec. Doc. 14, p. 10.
[36] Rec. Doc. 1-1, p. 2.
[37] Rec. Doc. 14, p. 10.
[38] La. Civ. Code art. 2642.

assignee is subrogated to the rights of the assignor against the debtor.[39] United's assignment of its "accounts receivable" was an assignment of the money Compliance owed United for its services under the subcontract, as an "account receivable" is "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services."[40] Therefore, per article 2642, Sterling was subrogated to United's right to payment under the subcontract upon assignment of United's accounts receivable. This right, however, is governed by Louisiana Revised Statutes § 10:9-404(a)(1), which provides that "the rights of an assignee are subject to . . . all the terms of the agreement between the account debtor and assignor . . . ."[41] As such, Sterling's right to payment under the subcontract is subject to all the subcontract's terms, including its forum selection clause.

Jurisprudence further supports this statutory interpretation. In *Factor King, LLC v. Block Builders, LLC*, a division of this Court, relying on both Civil Code article 2642 and Louisiana Revised Statutes § 10:9-404(a)(1), concluded that the underlying terms of a subcontract were enforceable against a factoring company that was assigned a subcontractor's accounts receivable.[42] Similarly, the Fifth Circuit found in *In re Advanced Systems, Inc.* that an assignee of accounts receivable was subject to the terms of a subcontract.[43] In accordance with relevant statutory authority and jurisprudence, the Court finds that Sterling is subject to the subcontract's forum selection clause through assignment/subrogation.

---

[39] *Id.*
[40] *Account Receivable*, BLACK'S LAW DICTIONARY (12th ed. 2024).
[41] La. R.S. § 10:9-404(a)(1).
[42] *Factor King, LLC v. Block Builders, LLC*, 193 F. Supp. 3d 651, 656–57 (M.D. La. 2016).
[43] *In re Advanced Systems, Inc.*, 37 F. App'x 87 (5th Cir. 2002).

### 2. Direct-Benefits Estoppel

Even if Sterling was not subject to the subcontract's forum selection clause through assignment/subrogation, it would be through direct-benefits estoppel. Direct-benefits estoppel "binds a non-signatory to a contract if the non-signatory: (1) knowingly seeks and receives direct benefits from the contract; or (2) seeks to enforce the contract or asserts causes of action that must be determined by reference to that contract."[44] The Louisiana Supreme Court recognizes this doctrine as an "equitable remedy . . . available in the absence of legislation and custom."[45] Though normally applicable in the arbitration context, the Fifth Circuit has held that "direct-benefit[s] estoppel may bind a non-signatory to a forum selection clause."[46] In its opposition, Sterling argues that it cannot be bound to the subcontract through direct-benefits estoppel because it did not have the requisite knowledge needed to satisfy the first prong of the analysis.[47] In making this argument, Sterling does not address the second prong of the direct-benefits estoppel analysis, which is also an avenue for binding a non-signatory to a contract's forum selection clause.

The Court finds that Sterling satisfies the second prong of the direct-benefits estoppel analysis. Through its suit, Sterling seeks to obtain payment from Compliance for United's services under the subcontract. Sterling cannot move forward with its suit for nonpayment without "reference to that [sub]contract."[48] Though Sterling's claims in this suit revolve around Compliance's alleged improper payment to United, the amount Sterling claims it is owed, the issue of assignment, and all other factors pertinent to this

---

[44] *Vloeibare Pret Ltd. v. Lloyd's Reg. N. Am., Inc.*, 606 F. App'x 782, 784 (5th Cir. 2015) (citing *Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 473 (5th Cir. 2010)).
[45] *Donelon v. Shilling*, 2019-00514 (La. 4/24/20); 340 So. 3d 786, 793.
[46] *Vloeibare Pret Ltd.*, 606 F. App'x at 784.
[47] Rec. Doc. 14, pp. 11–13.
[48] *Vloeibare Pret Ltd.*, 606 F. App'x at 784.

suit require reference to United and Compliance's subcontract. As such, Sterling is also bound to the subcontract's forum selection clause by direct-benefits estoppel.

Finding that the subcontract's forum selection clause is enforceable against Sterling through both assignment/subrogation and direct-benefits estoppel, the Court moves to its *forum non conveniens* analysis.

### C. *Forum Non Conveniens* Analysis

Since the subcontract's mandatory forum selection clause is enforceable against Sterling, the Court need not give weight to Plaintiff's choice of forum and need only consider arguments regarding public interest factors when conducting its *forum non conveniens* analysis.[49] With respect to public interest factors, Sterling argues that "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law, is not different between this Court and the 19th JDC."[50] Further, "[t]he public interest factors are meant to be used in situations where the suit was filed in an out of state federal court, or in rare circumstances, a different federal court in the state[,] [n]ot where the case was filed in the Defendant's home city and home court, as is the case here."[51]

Given the rarity of public interest factors outweighing a mandatory and enforceable forum selection clause, such a clause "controls the *forum non conveniens* inquiry 'in all but the most unusual cases.'"[52] The Court does not find that this is one of the rare cases in which the public interest factors favor keeping a case despite the existence of a

---

[49] *Barnett*, 831 F.3d at 300 (internal citations and quotations omitted).
[50] Rec. Doc. 14, p. 15.
[51] *Id.* at p. 14.
[52] *Noble House, L.L.C.*, 67 F.4th at 248.

mandatory, valid, and enforceable forum selection clause.[53] Sterling cites no authority in support of its argument that public interest factors weigh in its favor. Nor does Sterling provide any support for its theory that a forum selection clause providing for venue in a defendant's home state court is unenforceable if suit is brought in that defendant's home federal court. Accordingly, Compliance's Motion to Dismiss for *Forum Non Conveniens* is granted.

### III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss for *Forum Non Conveniens*[54] filed by Defendant Compliance Envirosystems, LLC is GRANTED. Plaintiff Sterling Commercial Credit, LLC's suit is DISMISSED WITHOUT PREJUDICE to its right to refile its suit in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 26th day of March, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[53] *See Matthews*, 108 F.4th at 367 (citing *Noble House, L.L.C.*, 67 F.4th at 249).
[54] Rec. Doc. 10.